UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

TARUN KSHETRAPAL,                                  :

                 *Plaintiff*,                :

        -against-                           :

DISH NETWORK, LLC, VIKAS ARORA, and    :
IZABELA SLOWIKOWSKA                         :

          *Defendants*.              :
------------------------------------------------------------- x

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED: _2-27-15_                │
└─────────────────────────────────────┘
```

14-cv-3527 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Tarun Kshetrapal sued his former employer Dish Network LLC ("Dish Network") and two Dish Network employees, alleging: (1) violations of the Sarbanes-Oxley Act ("SOX"), (2) violations of the Dodd-Frank Act ("DFA"), (3) tortious interference with contract, (4) tortious interference with business relations, and (5) defamation. Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), except the portion of Plaintiff's SOX claim concerning his pre-termination actions, which Defendants concede states a claim. For the reasons set forth below, the motion to dismiss the SOX claim is DENIED. The motion to dismiss the DFA claim is GRANTED. The motion to dismiss the tortious interference with contract claim is GRANTED. The motion to dismiss the tortious interference with business relations claim is DENIED. The motion to dismiss the defamation claim is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

    From March 2007 through November 2008, Plaintiff was employed as the Associate Director of South Asian Marketing for Dish Network, a satellite television broadcasting

company. Compl. ¶¶ 6, 13. His responsibilities consisted of marketing Dish Network's South Asian television channels. *Id.* ¶ 16.

Plaintiff reported to non-party Tracy Thompson West, Vice President for International Marketing and Programming. In April 2007, West retained the marketing agency Aman Entertainment, Inc. d/b/a Dreamakers ("Dreamakers"), to "furnish grass roots marketing services." *Id.* ¶¶ 2, 19. In spring 2008, Plaintiff began to question the legitimacy of Dreamakers' invoicing to Dish Network. He informed West and Defendant Izabela Slowikowska, General Manager of Programming for Dish Network's International Department, of his belief that Dreamakers was invoicing Dish Network for work that Dreamakers had either performed incorrectly, or had not performed at all. *Id.* ¶¶ 8, 39. Plaintiff contends that West and Slowikowska were aware of Dreamakers' fraudulent invoicing, but continued to work with Dreamakers in return for bribes from the agency. *Id.* ¶¶ 29-37, 40.

In August 2008, Plaintiff performed an investigation to determine whether Dreamakers was properly performing its marketing duties for Dish Network, and found that Dreamakers' performance was inadequate for a number of reasons. *Id.* ¶ 42. Plaintiff furnished reports to West and Slowikowska describing the inadequacies, but they merely reprimanded Plaintiff for investigating Dreamakers' activities. *Id.* ¶¶ 43-51.

In September 2008, Plaintiff refused to sign off on certain Dreamakers invoices that he believed to be fraudulent. Sonia Patel, the CEO of Dreamakers, demanded that West fire Plaintiff, but West declined to do so. *Id.* ¶¶ 53-54. In response, Patel threatened to expose the fact that West had accepted a steeply discounted Mercedes from Dreamakers. *Id.* ¶ 54. West then reported her receipt of the Mercedes to Eric Sahl, Dish Network's Senior Vice President of Programming, who commenced an internal investigation into the matter. *Id.* ¶¶ 54-55. Plaintiff

2

cooperated fully with the investigation, which validated Plaintiff's concerns regarding Dreamakers' fraudulent invoicing. In October 2008, Dish Network discontinued its relationship with Dreamakers, fired West, and issued a warning to Slowikowska. *Id.* ¶ 57. In November 2008, Dish Network, "without justification," forced Plaintiff to resign. *Id.* Following Plaintiff's departure from Dish Network, Slowikowska "repeatedly referred to Plaintiff's 'shady' business ethics" during conversations with other employees. *Id.* ¶ 67.

In December 2008, Dreamakers filed a breach of contract action against Dish Network. Dish Network asserted counterclaims for Dreamakers' alleged fraudulent invoicing and bribery. *Id.*¶ 58. Plaintiff was deposed during the course of the litigation, and testified regarding Dreamakers' fraudulent invoicing and misconduct; he further explained that he had discussed these issues with West and Slowikowska, but they had "repeatedly overruled his complaints." *Id.* ¶ 61.

In January 2009, Dish Network appointed Chris Kuelling to replace West as Vice President for International Programming. That same month, Plaintiff obtained a job as a Senior Vice President of South Asian Marketing at SAAVN, LLC, a Bollywood music streaming service. *Id*. ¶¶ 64-65. In fall 2009, Dish Network placed online advertising with SAAVN, but Slowikowska subsequently instructed Dish Network's marketing manager not to conduct further business with SAAVN. *Id.* ¶ 68.

In June 2010, Plaintiff was offered a position at Nimbus Communications Limited as the "in-country" head of NeoSports, a new cricket channel; but several days later a Nimbus executive rescinded the offer, explaining that Dish Network's International Programing Department had "conveyed . . . that it did not want Plaintiff at the helm of the channel." *Id.* ¶ 69.

Plaintiff alleges that Kuelling provided a negative reference about him to Nimbus, in violation of Dish Network's neutral reference policy. *Id.* ¶¶ 71-72.

In March 2011, Defendant Vikas Arora, a manager of International Content at Dish Network, advised SAAVN that "[t]he direction internally at this time is not to work with SAAVN"; that "Dish's management [was] unwilling to work with SAAVN because it employs" Plaintiff; and that Arora would be unable to "get approvals" to work with SAAVN. *Id.* ¶¶ 74-75. In addition, Slowikowska informed Arora that if Dish Network placed advertisements with SAAVN, an "extra layer of audit" would be required due to Plaintiff's "prior unethical business conduct." *Id.* ¶ 116. Slowikowska further raised the issue of Plaintiff's "prior unethical behavior" during a conversation with Kuelling regarding doing business with SAAVN. *Id.* ¶ 78.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* At the motion to dismiss stage, the court "assess[es] the legal feasibility of the complaint," but does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011).

## ANALYSIS

### I.     Sarbanes-Oxley Claim

Pursuant to SOX, an employer may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act" that an employee performs in blowing the whistle on certain types of fraud. 18 U.S.C. § 1514A. To prevail on a SOX whistleblower retaliation claim, an employee must "prove by a preponderance of the evidence that (1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013).

Defendants argue that Plaintiff's SOX claim is limited to his pre-termination protected activities.[1] The Court disagrees; given the language and purpose of the SOX statute, its scope should not be so narrowly circumscribed.

In considering the scope of the term "employee" under Section 1514A, the "first step . . . is to determine whether the language at issue has a plain and unambiguous meaning." *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The inquiry ceases if "the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* Whether a statute is ambiguous "is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Torres v. Holder*, 764 F.3d 152, 156 (2d Cir. 2014) (citations omitted).

While "[a]t first blush, the term 'employees' . . . would seem to refer to those having an existing employment with the employer in question," the term is ambiguous, when read in the context of Section 1514A, as to whether it includes former employees. *Cf. Robinson*, 519 U.S. at

---

[1] Defendants do not seek dismissal of the SOX claim relating to Plaintiff's pre-termination conduct.

341. SOX does not define "employees," nor does the statute contain a "temporal qualifier" indicating that the term was intended to apply only to current employees. *Cf. id.*  In addition, the remedies set forth in Section 1514A state that an "employee" is entitled to "reinstatement with the same seniority status that the employee would have had, but for the discrimination."  Since a current employee cannot be reinstated, it follows that the term "employee" as used in the Section includes "former employees."

Since the term "employees" is ambiguous, the Court turns to other sources to resolve the ambiguity. *See id* at 345.  One such source is the regulations and administrative decisions promulgated by the Department of Labor ("DOL").[2]  The implementing regulations specifically define "employee" to include "an individual presently *or formerly* working for a covered person."  29 C.F.R. 1980.101 (emphasis added).  Similarly, the Administrative Review Board ("ARB") recently held that an employee's post-termination whistleblowing can constitute protected activity under SOX. *See Levi v. Anheuser Busch Inbev*, 2014 DOLSOX LEXIS 42, at * 5 (ARB July 24, 2014) ("[Plaintiff's] *post-discharge filings* with OSHA of the whistleblower complaints constitute SOX-protected activity . . . . The ALJ erred in limiting his consideration of whistleblower activity to only [plaintiff's] actions occurring prior to his discharge from employment.")  These interpretations comport with the intended purpose of SOX—to "combat what Congress identified as a corporate culture, supported by law, that discourages employees

---

[2] The proper level of deference to be afforded to such regulations and administrative decisions is not clear. *See Lawson v. FMR LLC*, 134 S. Ct. 1158, 1186-87 (2014) (Sotomayor, J., dissenting) (DOL interpretation not entitled to *Chevron* deference because Congress delegated to the Securities and Exchange Commission, not DOL, authority "to make rules carrying the force of law"); 69 Fed. Reg. 52104, 52105 (Aug. 24, 2004) (Section 1514A implementing regulations are procedural and "not intended to provide [statutory] interpretations"); *Nielsen v. Aecom Tech. Corp.*, 762 F.3d 214, 220 (2d Cir. 2014) ("[T]his Circuit has not yet decided whether Congress delegated interpretive authority over § 1514A to the ARB in Sarbanes-Oxley, and the Supreme Court recently declined to resolve this issue.").  Nonetheless, courts have afforded *Skidmore* deference to DOL regulations and administrative decisions interpreting Section 1514A. *See Lawson v. FMR LLC*, 670 F.3d 61, 92 (1st Cir. 2012) (Thompson, J., dissenting) (applying *Skidmore* deference to Section 1514A implementing regulations), *cited in Lawson*, 134 S. Ct. at 1174; *Nielsen*, 762 F.3d at 220 (ARB determination pursuant to Section 1514A entitled to *Skidmore* deference). The Court agrees with the DOL's assessment that former employees are covered under Section 1514A.

from reporting fraudulent behavior not only to the proper authorities . . . but even internally."[3]
*Bechtel*, 710 F.3d at 446; *see Lawson v. FMR LLC*. 134 S. Ct. at 1170 (purpose of SOX is to
"encourage whistleblowing by . . . employees who suspect fraud involving the public companies
with whom they work").

Defendants argue that Section 1514A does not apply to Plaintiff's post-termination
deposition testimony. Mtn. at 6. Defendants' cases, however, deal with the "terms and
conditions of employment," which relates to the third element of a whistleblower retaliation
claim—whether plaintiff suffered an unfavorable personnel action. *See Harvey v. Home Depot,
Inc.*, 2004 DOLSOX LEXIS 47, at *10-11 (ALJ May 28, 2004) (plaintiff could not establish "the
presence of an unfavorable or adverse personnel action" because the action did not occur while
plaintiff was defendant's employee or "adversely affect[] the terms or conditions of any
subsequent employment"); *see Pittman v. Siemans AG*, 2007 DOLSOX LEXIS 56, at *16-17
(ALJ July 26, 2007) ("Since Complainant was not an employee at the time of the alleged *adverse
action*, this claim is not covered under SOX.") (emphasis added); *see also Jordan v. Sprint
Nextel Corp.*, 3 F. Supp. 3d 917, 932 (D. Kan. 2014).[4] Defendants concede that Plaintiff has

---

[3] Interpreting the term "employees" to include "former employees" is also consistent with recent Supreme Court
authority that the term "employee" should be interpreted expansively in the context of Section 1514A. In *Lawson v.
FMR LLC*, 134 S. Ct. 1158 (2014), the Court rejected "the dissent's 'narrower construction'" of the definition of
"employee," and held that Section 1514A whistleblower protection extends to employees of a public company's
contractors and subcontractors. *Id.* at 1176. The Court explained that a narrower construction would thwart the
purpose of SOX by "exclud[ing] from whistleblower protection countless professionals equipped to bring fraud on
investors to a halt." *Id.* at 1168. *Cf. Robinson*, 519 U.S. at 345 (holding that based on the language, context, and
purpose of Title VII, the term "employee" includes former employees, and noting that "to hold otherwise would
effectively vitiate much of the protection afforded by" the statute).

[4] Defendants cite two cases which hold that a plaintiff's post-employment actions cannot constitute protected
activity under SOX. In the first, plaintiffs merely conceded that post-employment activity could not constitute
protected activity; the court did not analyze the claim. *See Feldman v. Law Enforcement Assocs. Corp.*, 779 F.
Supp. 2d 472, 492-93 (E.D.N.C. Mar. 10, 2011) ("Plaintiffs admit that . . . post-employment actions cannot
constitute protected activity under SOX."). The second is an ALJ decision from ten years prior to the ARB's
decision in *Levi*, 2014 DOLSOX LEXIS 42. *See Hughart v. Raymond James & Assocs., Inc.*, 2004 DOLSOX
LEXIS 92, at *129 (ALJ Dec. 17, 2004) (plaintiff's whistleblowing letter did "not constitute protected activity
because [plaintiff's] employment with [employer] had already ended").

adequately pled the third element of his SOX whistleblower claim; indeed, Defendants do "not argu[e] that SOX does not cover post-employment blacklisting." Reply Mtn. at 2. Contrary to Defendants' assertions, therefore, the phrase "terms and conditions of employment" does not limit the scope of Plaintiff's protected activity.

Plaintiff's post-termination deposition testimony is protected by SOX. Plaintiff testified regarding what he believed to be Defendants' fraudulent behaviour—in fact, Plaintiff's testimony may have benefitted Defendants, who were asserting counterclaims against Dreamakers on the basis of that very behaviour. Moreover, a contrary holding would discourage employees from exposing fraudulent activities of their former employers for fear of retaliation in the form of blacklisting or interference with subsequent employment. Such a result would contravene the purpose of SOX, to "encourage whistleblowing by . . . employees who suspect fraud involving the public companies with whom they work." *Lawson*, 134 S. Ct. at 1170.

## II.     **Dodd-Frank Act Claim**

Plaintiff originally sought compensatory damages based on Defendants' alleged violations of the DFA. Compl. Wherefore Cl. ¶ B. Plaintiff concedes, however, that "recent judicial authority" holds that the DFA's anti-retaliation provision does not apply retroactively, and that Plaintiff cannot recover damages for conduct occurring prior to July 22, 2010, the effective date of the DFA. Opp. Mtn. at 11 n.8. Because Defendants' alleged interference with Plaintiff's employment opportunity at Nimbus occurred in June 2010, Plaintiff does not seek monetary damages arising from the lost opportunity. *Id.* Instead, Plaintiff seeks "injunctive and declaratory relief . . . with respect to the continuing harassment perpetrated after the DFA's effective date." *Id.* at 12.

8

That type of relief is not available to Plaintiff. The text of the DFA provides for injunctive relief and sets forth specific instances in which such relief is permissible. *See, e.g.*, 12 U.S.C. § 5564. The "Protection of Whistleblowers" section of the DFA, on the other hand, provides that:

> Relief for an individual prevailing in an action brought under subparagraph (B) shall include—
> (i) reinstatement with the same seniority status that the individual would have had, but for the discrimination;
> (ii) 2 times the amount of back pay otherwise owed to the individual, with interest; and
> (iii) compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.

15 U.S.C. § 78u-6(h). Congress declined to include injunctive and declaratory relief in the text of this section, indicating that such relief is not available. *See Conboy v. AT&T Corp.*, 241 F.3d 242, 255 (2d Cir. 2001) (injunctive relief not available where statute "establishe[d] a comprehensive scheme of remedies available . . . that [did] not include a general right to seek private injunctive relief for violations of the Act").

While relief is not available to Plaintiff under DFA, he is not without a remedy. To the extent that Plaintiff seeks injunctive and declaratory relief based on Defendants' alleged conduct in "blacklist[ing] and harass[ing]" him, Plaintiff may pursue that relief in connection with his SOX claim.[5] Opp. Mtn. at 11; *see* 18 U.S.C. 1514A ("An employee prevailing in any action

---

[5] Even if the relief Plaintiff seeks were available, his claim may be insufficient under DFA for another reason. Courts in this district are split on the issue of whether, to constitute a "whistleblower" for purposes of the DFA, an individual must report violations directly to the Securities and Exchange Commission, or whether reporting the conduct internally is sufficient. *Compare Yang v. Navigators Group, Inc.*, 18 F. Supp. 3d 519, 534 (S.D.N.Y. 2014) (statute does not limit whistleblower protection only to individuals who report violations to SEC) *with Berman v. Neo@Ogilvy LLC*, 2014 U.S. Dist. LEXIS 168840, at *11-12 (S.D.N.Y. Dec. 5, 2014) (DFA provides private cause of action only for individuals who report violations to SEC). The Fifth Circuit has recently held that only individuals who report violations to the SEC are entitled to DFA protection. *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 629 (5th Cir. 2013). Because the relief Plaintiff seeks under DFA is unavailable in any event, the Court declines to address this issue.

under [whistleblower protection section] shall be entitled to all relief necessary to make the employee whole.").

### III.    Tortious Interference with Contract Claim

Plaintiff has indicated that he "will not pursue" his tortious interference with contract claim. *See* Opp. Mtn. at 16, n.13.  Accordingly, Defendants' motion to dismiss this claim should be granted.

### IV.    Tortious Interference with Business Relations Claim

Plaintiff asserts that his tortious interference with business relations claim is governed by New Jersey law because he suffered his injuries in New Jersey, where he resides.  Defendants respond that New York law applies because the elements of the claim are the same in New York and in New Jersey.

A federal court adjudicating state law claims "appl[ies] the choice of law rules of the forum state." *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989).  Under New York choice-of-law rules, the Court first determines "whether there is an actual conflict between the laws of the jurisdictions involved." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006).  For tort claims, if a conflict exists, "the law of the jurisdiction having the greatest interest in the litigation" applies. *Licci v. Lebanese Canadian Bank*, 672 F.3d 155, 157 (2d Cir. 2012).

New Jersey and New York law are different with respect to tortious interference with business relations.  Where, as here, Plaintiff does not allege that Defendants were his business competitors, New Jersey law applies a balancing test to determine whether the alleged conduct is "improper." *See Nostrame v. Natividad Santiago*, 213 N.J. 109, 121-23 (2013).  New York law, on the other hand, considers whether Defendants' "sole purpose" was harming Plaintiff, or

10

whether Defendants' conduct otherwise constituted a crime or tort. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).

Because a conflict exists, the law of the location where the tort occurred will apply. *Licci*, 672 F.3d at 158. Here, it is reasonable to conclude that the tort occurred in New Jersey: the conversations at issue involved Plaintiff's potential employment at NeoSports, an entity incorporated in New Jersey. Plaintiff also resides in New Jersey and sustained his alleged injuries in that state.

Under New Jersey law, determining whether Defendants' conduct was "improper" requires balancing "the nature of and motive behind the conduct, the interests advanced and interfered with, societal interests that bear on the rights of each party, the proximate relationship between the conduct and the interference, and the relationship between the parties." *Nostrame*, 213 N.J. at 122. On balance, Plaintiff has adequately alleged that Defendants' conduct was "improper." Plaintiff does not simply claim that Defendants provided a negative reference; he also asserts that the motive behind Kuelling's derogatory statements was Defendants' ongoing efforts to blacklist Plaintiff. In support of his assertion, Plaintiff alleges that "DISH's International Programming Department conveyed to NeoSports that it did not want Plaintiff at the helm of the channel" forcefully enough that the Chief Operating Officer for Nimbus "conveyed his concern that hiring" Plaintiff "would jeopardize Nimbus' ability to broadcast NeoSports" on Dish Network. Compl. ¶ 69. Plaintiff also claims that Kuelling provided conflicting accounts to the DOL regarding his interactions with Nimbus. Compl. ¶ 72.

## V.   **Defamation Claim**

Plaintiff asserts a defamation claim based on: (1) Arora's statements to SAAVN that Dish Network was unwilling to work with Plaintiff, and (2) Slowikowska's statements regarding

11

Plaintiff's unethical behavior.  Compl. ¶¶ 67, 74-75, 78.  "Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012).  To state a claim for slander, a plaintiff must demonstrate: "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege."  *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001).

### A.  Arora's Statements

The allegedly defamatory statements attributed to Arora are: (1) "[t]he direction internally at this time is not to work with SAAVN"; (2) "DISH's management is unwilling to work with SAAVN because it employs [Plaintiff]"; and (3) Arora would be unable to "get approvals" to work with SAAVN.  Compl. ¶¶ 74-75.  Plaintiff has not articulated a sufficient defamation claim based on these statements because he does not contend that any of the statements are false.  *See Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 215-16 (S.D.N.Y. 2014) ("Plaintiff bears the burden of proving that the statements are false, and the inquiry only advances to the issues of whether the statements are defamatory . . . after their falsity is established.")  Indeed, Plaintiff's SOX claim is premised upon his allegations that Dish Network refused to work with SAAVN while Plaintiff was employed there.

Plaintiff asserts that Arora's comments constitute "defamation by indication."  To allege defamation by implication "where the factual statements at issue are substantially true," a plaintiff must "make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference."  *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28,

38 (1st Dep't 2014). Plaintiff not made a "rigorous showing" that the communications at issue impart a defamatory inference. Arora relayed to SAAVN that Dish Network was unwilling to work with Plaintiff. Plaintiff does not explain the specific defamatory inference that the comments conveyed, nor do the statements indicate that Arora endorsed any particular inference. Plaintiff asserts that the statements must be judged "in the context of industry-wide knowledge of the 'biggest scandal in DISH's corporate history,'" but such "industry-wide knowledge" is not a sufficient basis to convert Arora's statements into defamation. *See* Opp. Mtn. 23.

### B. Slowikowska's Statements

Plaintiff alleges that Slowikowska defamed him by: (1) raising Plaintiff's "prior unethical behavior" with Kuelling; (2) referring to Plaintiff's "'shady' business ethics" in conversations with other DISH employees; and (3) telling Arora that if Dish Network placed ads with SAAVN, "an 'extra layer of audit' would be required due to the Plaintiff's 'prior unethical business conduct.'" Compl. ¶¶ 67, 78, 116. Defendant asserts that the alleged statements fall within the common interest privilege.

An individual is protected by a "qualified privilege" if she has "an interest or duty" to make communication, and does so to "a person with a corresponding interest or duty," even if the communication is otherwise slanderous. *See Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 62 (2d Cir. 1993). An individual is not entitled to the privilege, however, if she "acted with (1) common law malice, or (2) outside the scope of the privilege, or (3) with knowledge that the statement was false or with a reckless disregard as to its truth." *Id.* Common-law malice "means spite or ill will and defeats the privilege only if it is the one and only cause for the publication." *County Vanlines Inc. v. Experian Info. Solutions, Inc.*, 317 F. Supp. 2d 383, 390 (S.D.N.Y. 2004) (citations omitted).

13

Slowikowska is not entitled to the common interest privilege. Plaintiff has adequately alleged that Slowikowska repeatedly accused Plaintiff of having engaged in unethical behavior, not for legitimate employment-related purposes, but solely based upon personal animus against Plaintiff, and in retaliation for his whistle-blowing activities. Accordingly, the defamation claim against Slowikowska will not be dismissed at this stage.

## CONCLUSION

The motion to dismiss the portion of Plaintiff's SOX claim concerning his post-employment deposition testimony is DENIED; the motion to dismiss the DFA claim is GRANTED; the motion to dismiss the tortious interference with contract claim is GRANTED; the motion to dismiss the tortious interference with business relations claim is DENIED; and the motion to dismiss the defamation claim is GRANTED with respect to the statements by Arora and DENIED with respect to the statements by Slowikowska.

Dated:  New York, New York                     SO ORDERED
        February 27, 2015

                                        PAUL A. CROTTY
                                        United States District Judge